Jay A. Mount v. Commissioner.
Mount v. Commissioner
Docket No. 8401.
United States Tax Court
1946 Tax Ct. Memo LEXIS 28; 5 T.C.M. (CCH) 1004; T.C.M. (RIA) 46276; November 29, 1946
*28 Held, that in the taxable year a bona fide partnership existed between petitioner and his wife, who were engaged in business as manufacturers' agents or representatives. The wife contributed capital "originating with her", which helped to get the business started. She exercised joint management control with petitioner, devoted all her time to the business, and rendered "vital" services which contributed in a substantial measure to the earning of the partnership income. Held, further, that respondent properly disallowed certain claimed "entertainment expenses" for lack of substantiation, that income from one manufacturer's account was understated in an amount determined by respondent, but that respondent erred in disallowing deduction under section 23(a) of the Code for certain "attorney's fees". William P. MacCracken, Jr., Esq., and Errett Smith, Esq., 1152 National Press Bldg., Washington 4, D.C., for the petitioner. Paul E. Waring, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion An income tax deficiency of $26,000.28 for the calendar year 1941 has been determined by respondent against petitioner. The main question at issue is whether petitioner in that *29 year was carrying on business in partnership with his wife within the meaning of the income tax laws. Subsidiary questions are whether respondent properly held that business income was understated by an amount of $335.17 and whether he properly disallowed $318 claimed business expense and $875 claimed attorney's fees. Findings of Fact The petitioner, Jay A. Mount, is an individual residing in Washington, D.C. His income tax return for the year involved was filed with the collector of internal revenue for the district of Maryland, at Baltimore. Petitioner and his wife, Estelle R. Mount, were married in 1920, shortly after petitioner's discharge from the Air Corps after World War I. Petitioner had some engineering training in a veteran's school but is not a graduate engineer. In 1922, he entered the air mail service at Cleveland, Ohio, first as an airplane mechanic, then as crew chief, and later as assistant field manager. In 1926, petitioner and his wife moved to Washington, D.C., where petitioner was employed by the Aeronautics Branch, Department of Commerce. In the latter part of 1935, he resigned from the Government and was employed as a salesman. Prior to her marriage Mrs. Mount *30 had had business college training, had been employed as a secretary, and as an office manager for the Armand Cosmetic Company, supervising nine employees. In the period between 1927 and 1929, she owned and operated a beauty parlor as her own business, finally disposing of it to care for her small children. Petitioner went into business for himself in April, 1937, operating for a short while under the trade name U. S. Engineering Sales Co. Shortly thereafter, together with his wife, M. J. Collins, and R. B. Collins, he organized two corporations, Ro-Tray Corporation and Collins and Mount, Inc. The former engaged in the manufacture and sale of rotatable shelving for tool cribs. The latter engaged in the business of representing manufacturers in the Washington, D.C., area. Mrs. Mount was originally an officer and stockholder of both corporations. Later she transferred her stock in Ro-Tray Corporation to R. B. Collins, the son of M. J. Collins, but she continued to be an officer and stockholder in Collins and Mount, Inc., together with petitioner and R. B. Collins. She worked occasionally at the office and attended all directors' and stockholders' meetings. Both corporations sustained *31 operating losses until 1940. In the spring of that year the elder Collins notified the Mounts he wanted to dissolve Ro-Tray Corporation, and young Collins wanted to dissolve Collins and Mount, Inc., as he planned to enter the Army. He told the Mounts to take the accounts with the manufacturers and continue to represent them if they so chose. The only account of any value was with Electric Heat Control Co., and it was of doubtful value unless properly serviced. Upon the dissolution of the corporations petitioner was practically without funds. He received some job offers as a paid employee and was inclined to accept one of them. Mrs. Mount thought that with her business experience she and petitioner, by working together, could make a success of the business of representing manufacturers, and she induced petitioner to refuse the job offers. They mentioned the matter of a partnership to their regular attorney and were informed by him that no particular formality was required and that an oral agreement to be partners was sufficient under the law. Petitioner and Mrs. Mount thereupon verbally agreed in the summer of 1940 to work together in developing the business, sharing equally in profits *32 and losses. Mrs. Mount suggested that in the beginning they operate in his name because of the reluctance of some businessmen to deal with a woman until she has proved her ability. Some time later Mrs. Mount thought it would be advisable that the partnership agreement be reduced to writing, so as to protect her in case anything should happen to petitioner and perhaps enable her to continue the business. On February 9, 1941, therefore, petitioner and Mrs. Mount, with the aid of a business form book they had at home, jointly drafted and executed the following agreement: Agreement made in Washington, D.C. on the 9th day of February, 1941, between Jay A. Mount, residing at 2920 McKinley St., N.W. herein called the "first party" and Estelle R. Mount of the same address, herein called the "second party." Wherein it is mutually agreed as follows: 1. That the parties hereto shall, as partners, engage in and conduct the business of Manufacturers Agents. 2. That the name of the partnership shall be J. A. Mount. 3. That the term of the partnership shall begin on February 9, 1941, and shall continue until cancelled. Either party may cancel by giving 90 days notice of his or her intention to do *33 so. 4. That the place of business of the partnership shall be located in the National Press Bldg., Washington, D.C. 5. That the capital of the partnership, and all other monies of, as well as the instruments for the payments of monies, to the partnership shall be deposited in the name of the partnership in the Lincoln National Bank, Washington, D.C., and all moneys credited therein to the partnership shall be divided share and share alike, after deducting operating expenses. 7. That each party shall devote all of his time and attention to the business of the partnership. 8. That at the end of each partnership year, a full and accurate inventory shall be prepared and net profits or net loss divided equally between the parties hereto and the account of each shall be credited, or debited, as the case may be, with his proportionate share thereof. In witness whereof, the parties hereto have hereunto set their hands and seals, the day and year first written above. In 1940, the Mounts used their home as an office. Mrs. Mount had a thousand dollars of her own which she had received from her father as a gift some two or three years earlier. With this money she purchased a typewriter, office *34 furniture, and supplies, and financed three trips of petitioner to Chicago in search of manufacturers to represent. While in Chicago petitioner saw a business friend, Gordon Clark, who introduced him to officials of the Metal Door & Trim Co., of La Porte, Indiana, and of the Waukesha Motor Co., Waukesha, Wisconsin, and was of asistance to petitioner in obtaining agreements to represent these manufacturing concerns in dealing with the Government. During the period their office was in their home, Mrs. Mount worked together with petitioner in the composition of correspondence, entertaining and conferring with prospective clients or principals, and making plans for getting business. On or about March 1, 1941, they were able to rent office space in the National Press Building and then moved their office to that location. Pursuant to their partnership agreement, the Mounts did business under the name "Jay A. Mount" or "J. A. Mount". Contracts with their principals were entered into in that name and were signed by Mr. Mount. Manufacturers whom they represented in 1941, in addition to Electric Heat Control Co., Metal Door & Trim Co., and Waukesha Motor Co., were Gorman-Rupp Co., of Mansfield, *35 Ohio, Murray & Tregurtha, Inc., of North Quincy, Massachusetts, Bardco Manufacturing & Sales Co., of Dayton, Ohio, and Los Angeles, California, and The Leland Electric Co., of Dayton, Ohio. The business of being manufacturers' agents or representatives in Washington during the period here involved consisted of rendering assistance to the manufacturing principals in procuring orders, largely from the Federal Government, assistance in handling orders after they were obtained, the interpretation of specifications, helping subcontractors to get priorities, acting as go-between in settling complaints of the Government with the manufacturers, expediting deliveries of products ordered, etc. Expediting delivery involved assistance in obtaining priorities for both prime and subcontractors and inducing subcontractors to give preference to production of particular items needed by the prime contractor. From the opening of their office in the National Press Building, Mrs. Mount devoted all her time to the business, working a full business day every day. There was a division of labor between petitioner and Mrs. Mount. Petitioner called on and conferred in person with purchasing agents and procurement *36 officers in the War and Navy Departments, discussing plans, specifications, and bids. Most of the contracts between the Government and the manufacturers represented by the Mounts were for special order equipment, such as aircraft parts, portable refrigerated shipping boxes, outboard propulsion units for the Navy, booster pumps for specialized application, electric motors, etc. Petitioner rendered some assistance to both the Navy and to the manufacturers in connection with development of the designs for some of this equipment. Mrs. Mount, on the other hand, did most of her work in the office. She handled the business correspondence and telephoning, kept records of receipts and disbursements, and had charge of collecting money due the firm. She also did most of the servicing of the Electric Heat Control Co. account. That company had been dissatisfied with the arrangement it had with Collins and Mount, Inc., and Mrs. Mount personally assured the president that his company would receive better service from the Mounts. In servicing that account she made numerous trips alone to Camp Holabird to obtain Government specifications, forward them to the manufacturer, and deliver the latter's bid. *37 Petitioner spent most of his time away from the office, either on out-of-town trips or making calls on Government departments. When he was away, Mrs. Mount was in complete charge of the office, and visiting officers of their principals then transacted business with her as freely as with Mr. Mount. Finally, Mrs. Mount handled about 98 per cent of the "priorities" work, expediting deliveries of products ordered by the Government. In that connection she dealt directly with high officials of all their principals, both in person, by letter, and by telephone, and she also dealt directly with Government officials by telephone. Petitioner and Mrs. Mount exercised joint control in the conduct of their business. They discussed pro and con all prospective manufacturing clients before engaging to represent them, and she participated with petitioner in conferences with the manufacturers. She always insisted that a written contract be obtained with the manufacturers. On two occasions she refused to permit investment of the partnership funds in enterprises of their principals. Fees and commissions income of the partnership in the taxable year amounted to a little more than $90,000, about 80 per cent *38 of which was collected in the last month of the year. The partnership receipts were deposited in a bank account in the name "Jay A. Mount", checks on which were generally prepared by Mrs. Mount but had to be signed by petitioner. The first withdrawal by Mrs. Mount was on December 2, 1941, in the amount of $1,000, which she used to open a personal account of her own. On December 31 a further distribution was made to her in the amount of $25,000, which she likewise deposited in her personal account. None of this money was thereafter available to petitioner or to the partnership. She used it only for purely personal purposes. All household and living expenses were paid by petitioner. In the latter part of December the Mounts' attorney referred them to an accountant, who called at their office the first week in January, 1942. He prepared for them a partnership return of income, on the cash receipts and disbursements basis, and used the name "Jay A. Mount & Co." because he understood that they were then trading under that name. One of the manufacturers had suggested in the latter part of 1941 that "Co." be added to the firm name because that manufacturer, for purposes of its own advertising, *39 preferred to state that it was represented by companies rather than by individuals. On January 17, 1942, a new bank account was opened in the name of "Mount & Co." with a transfer of $10,000 from the "Jay A. Mount" account. Both petitioner and Mrs. Mount were authorized to draw checks on the new account. The partnership return for 1941 disclosed net income of $87,307.19, one-half of which was reported each by petitioner and Mrs. Mount in their individual returns. Respondent has held that all the business income, with certain adjustments, is taxable to petitioner, except for a salary allowance of $3,600 to Mrs. Mount. In the partnership return, business income from the Electric Heat Control Co. was understated by $335.17, which respondent properly added to income. Of a claimed deduction in the amount of $709.78 for "entertainment expenses", respondent properly disallowed the sum of $318 for lack of substantiation. Respondent also disallowed deduction for $875 claimed as attorney's fees. This money was paid, $500 to the Mounts' attorney and $375 to an arbitrator, as fees for representing them in the arbitration of a dispute between the Collins and the Mounts in connection with dissolution *40 of the Ro-Tray Corporation and Collins and Mount, Inc. At the time of liquidation the Mounts received nothing except the Electric Heat Control Co. account and a check for one month's salary of petitioner from Ro-Tray Corporation in the amount of $275. The Mounts thought they were entitled to more and sought to salvage something from their interests. The $875 is a deductible expense. Opinion ARUNDELL, Judge: The principal question here is whether in the taxable year a bona fide partnership existed between petitioner and his wife, Mrs. Estelle R. Mount, which is to be recognized for Federal income tax purposes. At one time the respondent, or at least some of his agents, concluded that there was such a partnership for, after protests and a number of conferences with the revenue authorities at which petitioner was represented by counsel and at which briefs were filed, petitioner, on March 30, 1944, was notified by the internal revenue agent in charge that "after consideration of the protests the conclusion has been reached that there is no change in the net income of the partnership or the tax liability of the individuals from the returns as filed." The deficiency notice of March 8, 1945, *41 which gives rise to the instant proceeding, thus represents a change of mind on the part of the revenue officials. The circumstances just related prompted counsel for petitioner to present a somewhat novel plea of res judicata in this case, based upon the prior conferences and the notice of the internal revenue agent in charge. For reasons which we think should be obvious, we overruled the plea at the time of the hearing. We are of the opinion, however, that the earlier ruling of the revenue officials that petitioner and his wife were engaged in a bona fide partnership is amply supported by the evidence. It seems to us that Mrs. Mount satisfies every requirement laid down in the now familiar Tower and Lusthaus cases, * and that the business association between her and the petitioner fully meets the tests of a valid partnership. Not only did she contribute capital "originating" with her, but she also performed "vital" services and took an active and important part in the management of the business. It is true that capital, as such, was not a factor of great significance in the production of income once the *42 business was flourishing, but in the beginning a small amount of capital was vitally needed to get the business started. At that time petitioner had practically no funds of his own, and it was his wife who provided her own capital to finance the first trips seeking business and to purchase a typewriter, stationery, supplies, and office equipment. It is true that the business in which petitioner and his wife were engaged - that of manufacturers' agents or representatives - was largely of a personal service nature. But it is equally true that petitioner's wife worked as hard as, and perhaps played as important a part as, petitioner in the earning of the income. We have no doubt that much of the drive which made the business a success is to be attributed to her. Mrs. Mount worked a full business day every day. She was a competent and qualified business woman with an extensive business background and experience. She had formerly conducted a business of her own. In the office she had almost complete charge. She kept records of receipts and disbursements, handled the correspondence, and did secretarial work. But in addition to the office routine, she did much more. She interviewed clients *43 and transacted business with officials of the manufacturers whom the firm represented. With petitioner she took an equal part in determining what principals they should represent. She had charge of collecting moneys due the firm, and she refused to allow investment of partnership funds in ventures in which petitioner was inclined to invest. One of the accounts - the Electric Heat Control Co. - she serviced almost exclusively by herself. It was the account which was taken over from Collins and Mount, Inc., and she had personally promised the president of the company that she would see to it that his company received better service than formerly. Finally, Mrs. Mount had charge of practically all the "priorities" work and the expediting of materials and delivery in connection with every account represented by the Mounts. This was one of the most important services rendered by the organization, both to the manufacturers and to the Government. Officials of the manufacturers and officials of the Government alike dealt with her as freely as with petitioner and treated her as his equal. For the reasons stated, we conclude that respondent erred in taxing to petitioner all the income in question *44 except for a salary allowance to Mrs. Mount. We hold that a valid partnership existed in the taxable year between petitioner and his wife, and that the net income of the partnership should be taxed one-half to each. In the recomputation, some question may arise as to the period prior to February 9, 1941, the date of the written partnership agreement. Even if that were held to be the effective date of the partnership, it would appear that there would be no difference of any consequence in the tax result because the income was determined on the cash receipts and disbursements basis and practically all receipts and disbursements appear to have occurred after that date. However, we are convinced that from the beginning in 1940 petitioner and Mrs. Mount orally agreed to be equal partners, sharing 50-50 in profits and losses, and that the written agreement of February 9, 1941, was adopted merely to reduce to writing the substance of their earlier verbal agreement. We, therefore, hold that throughout the taxable year petitioner and his wife were equal partners, and the income should be divided on that basis. There remain for consideration certain minor issues, first, whether respondent properly *45 held that income from the Electric Heat Control Co. was understated by $335.17. There is almost no satisfactory evidence in this connection. Petitioner testified that he thought the item had probably been taken up into income either in 1940 or in 1942, but he admitted that an error may have been made to that extent in determining the 1941 partnership income. On this issue we must sustain the respondent. We must also sustain the respondent, for lack of satisfactory evidence, in disallowing $318 as entertainment expenses. Entertainment expenses which were properly substantiated were allowed by respondent. The final issue is the deductibility of $875 paid as attorney's and arbitrator's fees. We see no difference in principle between the situation here and the partnership accounting involved in , in which attorney's fees were held a deductible business expense. The expenditures here involved were "directly connected with" or "proximately resulted from" the business, within the meaning of the Kornhauser case, and are, we think, a proper deduction under section 23(a) of the Code. Decision will be entered under Rule 50. Footnotes
*. ; .↩